## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON ALERS, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-2073 |
| | : | |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a AMERICAN EDUCATION SERVICES et al., | : : : : | |
| Defendants. | | |

## <u>MEMORANDUM</u>

**Younge, J.**

## I.   INTRODUCTION

Currently before this Court are three (3) Motions to Transfer Venue—filed by Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") on June 30, 2020 (PHEAA Mot. to Transfer, ECF No. 31), Defendant Account Control Technology, Inc. ("ACT") on July 3, 2020 (ACT Mot. to Transfer, ECF No. 34), and Defendant Transworld Systems, Inc. ("TSI") on July 22, 2020 (TSI Mot. to Transfer, ECF No. 37) (collectively, the "Defendants' Motions").[1] Plaintiffs, Jason Alers and Kevin Crawford, filed an Opposition to Defendants' Motions to Transfer Venue on August 14, 2020.  (Opp., ECF. No. 40.)

The Court finds Defendants' Motions appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, Defendants' Motions will be granted, and this matter will be transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Middle District of Pennsylvania.

---

[1] In their motions, Defendants Account Control Technology, Inc. and Transworld Systems, Inc. simply noted their support of Defendant PHEAA's more comprehensive Motion to Transfer Venue.  Thus, Defendant PHEAA's Motion to Transfer Venue (ECF No. 31) will govern this Memorandum's analysis.

## II. BACKGROUND

This is a civil action for damages in connection with Defendants' alleged excessive garnishment of Plaintiffs' wages to service Plaintiffs' student loan debt. (ECF No. 1 at 5-10.) Plaintiffs' allege that Defendant PHEAA—a student loan servicer—is precluded, by Pennsylvania statute, from garnishing more than ten percent (10%) of a borrower's pay during a given pay period and from assigning its power to garnish wages to a third party. (*Id.* at 5-6.) However, Plaintiffs aver that Defendant PHEAA has routinely garnished wages at a rate of fifteen percent (15%) of a given borrower's pay and has unlawfully assigned the right to garnish said wages to third-party debt collectors—*i.e.,* Defendants Account Control Technology, Inc., Transworld Systems, Inc., and Performant Recovery, Inc. (*Id.* at 7-8.) [2] For the foregoing reasons, Plaintiffs, individually and on behalf of similarly situated borrowers, seek monetary damages and injunctive relief for Defendants' alleged illegal conduct based on theories of negligence, negligence *per se*, unjust enrichment, and conversion under Pennsylvania and California law. (ECF No. 1 at 11.)

## III. LEGAL STANDARD

In connection with this case, three of the four named Defendants[3] have, pursuant to 28 U.S.C. § 1404(a), filed Motions to Transfer Venue from the United States District Court for the Eastern District of Pennsylvania (the "Eastern District of Pennsylvania" or the "Eastern District") to the United States District Court for the Middle District of Pennsylvania (the "Middle District of Pennsylvania" or the "Middle District"). (ECF Nos. 31, 34, 37.) Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

---

[2] In contrast, Defendant PHEAA suggests that a federal statute—and not the Pennsylvania statute—govern the garnishment of wages and permit the fifteen percent (15%) rate. (PHEAA Mot. to Dismiss, ECF No. 33, Pg. 1.)
[3] Though only three of the four defendants filed formal motions, Defendant PHEAA notes: "All defendants concur in transfer of this matter to the Middle District." (PHEAA Mot. to Transfer Venue, ECF No. 31, Pg. 1 n.1.)

28 U.S.C. § 1404(a). The U.S. Supreme Court further instructs that, "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). However, as the Third Circuit notes, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)). Defendants—as movants—bear the burden of establishing the need for transfer, and "'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'" *Id.*; *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995).

In a transfer of venue analysis that does not involve a forum selection clause, the court conducts a two-part analysis. First, the court must decide whether the proposed transferee district has proper jurisdiction and venue, *i.e.*, could the case have been brought in the transferee district in the first instance. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450-51 (D.N.J. 1999). Second, the court applies a number of private and public factors to determine which forum is most appropriate to consider the case. *Id.*; *CentiMark Corp. v. Jacobsen*, No. CIV.A. 11-1137, 2011 WL 6000719, at *6-8 (W.D. Pa. Nov. 30, 2011).

In *Jumara*, the Third Circuit similarly recognized that in analyzing whether transfer is appropriate under § 1404(a), there are private and public factors that a court should consider. *Jumara*, 55 F.3d at 879-80. The private factors include: the plaintiff's forum preference; the defendant's forum preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;

and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Id*. at 879. The public factors include: the practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the public polices of the fora. *Id.* at 879-80.

IV.   DISCUSSION

As noted above, a court considering a motion to transfer venue engages in a two-step analysis: (1) assessing whether the transferee district court has proper jurisdiction and venue; and (2) applying the *Jumara* private and public factors to determine which forum is most appropriate.

A.   **Jurisdiction and Venue**

This Court first concludes that the Middle District of Pennsylvania would have had the proper jurisdiction and venue to initially hear this case. The transferee court would have proper jurisdiction and venue if, "at the time the action was originally commenced: (i) venue was proper in the transferee court under 28 U.S.C. § 1391 and (ii) the transferee court could have exercised personal jurisdiction over the defendants." *Days Inns Worldwide, Inc. v. Ram Lodging, LLC*, No. CIVA 09-2275 (SDW), 2010 WL 1540926, at *3 (D.N.J. Apr. 14, 2010); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).

With respect to jurisdiction, the Middle District of Pennsylvania could have exercised personal jurisdiction over Defendants in this case. Defendant PHEAA is a public corporation that is incorporated under the laws of the Commonwealth of Pennsylvania, is headquartered in Harrisburg, PA, and provides loan and debt collection services to borrowers in the Commonwealth. Pursuant to Pennsylvania's long-arm statute, the Commonwealth could also exercise personal jurisdiction over the remaining Defendants—Account Control Technology, Inc., Transworld

4

Systems, Inc., and Performant Recovery, Inc.—because they contracted with Defendant PHEAA to conduct business within the Commonwealth and have agreed to manage Defendant PHEAA's debt collection services. 42 Pa. Stat. and Cons. Stat. Ann. § 532(a)-(b). Thus, the Commonwealth has personal jurisdiction over Defendants. Additionally, a federal court has personal jurisdiction over a defendant who is subject to the jurisdiction of the state where the district court is located. Fed. R. Civ. P. 4(k)(1)(A).

Turning to venue, 28 U.S.C. § 1391(b)(2) notes, in relevant part, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." The Third Circuit further instructs that, "[i]n assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 295 (3d Cir.1994). Here, Plaintiffs and Defendants agree that Defendant PHEAA is headquartered in Harrisburg, PA (*i.e.*, the Middle District of Pennsylvania). (Compl. ¶ 18, ECF No. 1; Morrison Decl. ¶ 1, ECF No. 31-4.) Further, Defendants note that the notice of wage garnishment and the wage garnishment initiation process both took place in the Middle District of Pennsylvania. (Morrison Decl. ¶¶ 5-13, ECF No. 31-4.) Finally, one of the Plaintiffs, Jason Alers, resides in the Middle District of Pennsylvania. (Compl. ¶ 16, ECF No. 1.) Thus, the Middle District is arguably a judicial district in which a substantial part of the events giving rise to the claims occurred. Tellingly, Plaintiffs do not challenge whether the Middle District is a proper venue where the claim could have been originally brought—only that Defendants have not met their heavy burden of showing that such a transfer is convenient or in the interest of justice. (Opp., ECF. No. 40.)

Taken together, the Middle District would have had proper jurisdiction and venue over the original action (*i.e.*, the case could have been brought in the transferee district in the first instance), thereby satisfying the first step in the two-step analysis.

### B. *Jumara* Private and Public Factors

After assessing whether the case could have initially been brought in the transferee court, this Court must then apply the *Jumara* private and public factors to determine which forum is most appropriate.

This Memorandum first reviews the six (6) private factors in turn.

#### 1. Private Factor #1: Plaintiff's Choice of Venue

The first private factor considers the plaintiff's choice of forum. Generally, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request…." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). However, "a plaintiff's choice of venue is given less weight if the plaintiff chooses a venue in which he or she does not reside and in which none of the operative facts giving rise to the suit occurred." *Cable v. Allied Interstate, Inc.*, No. 12-CV-96-JD, 2012 WL 1671350, at *3 (E.D. Pa. May 11, 2012). Additionally, some courts within the Third Circuit have noted that a plaintiff's choice of forum is given even less weight in class action suits. *Fasano v. Coast Cutlery Co.*, No. CIV.A. 11-3977 SDW, 2012 WL 1715233, at *3 (D.N.J. May 15, 2012) ("…a plaintiff's choice of forum in a class action may not be entitled to as much deference as in the ordinary case"); *MP Vista, Inc. v. Motiva Enterprises LLC*, No. CIV.A. 07-099-GMS, 2008 WL 5411104, at *2 (D. Del. Dec. 29, 2008) ("Furthermore, the plaintiff's choice of forum becomes 'substantially less important' when he sues representatively on behalf of a class.").

6

In this case, Plaintiffs do not reside in their chosen venue—the Eastern District of Pennsylvania. Instead, Plaintiff Jason Alers resides in the Middle District of Pennsylvania, while Plaintiff Kevin Crawford resides in the United States District Court for the District of Montana (the "District of Montana"). (Compl. ¶¶ 16-17, ECF No. 1.) Though this case could be distinguished from *Cable*—in that Plaintiffs allege that a "disproportionate number of class members likely reside within [the Eastern District]" (Opp., ECF No. 40, Pg. 1)—the definitive facts that Defendant PHEAA's garnishment process, protocols, and procedures emanate from the Middle District and that Plaintiff Jason Alers resides there as well seemingly outweigh the speculative belief that a great portion of the potential class will reside in the Eastern District. However, even if Plaintiffs' choice of venue is not dispositive, Plaintiffs' preference still weighs *against* transfer.

### 2. Private Factor #2: Defendant's Choice of Venue

The second private factor examines the defendant's preferred forum. The defendant's choice of venue is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 198 (E.D. Pa. 2008) (quoting *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005)). Nevertheless, Defendants' prefer to litigate this case in the Middle District, which weighs *in favor* of transfer.

### 3. Private Factor #3: Whether the Claim Arose Elsewhere

The third private factor assesses where the claim arose. As the Eastern District has noted in the past, "[w]hen the vast majority of the acts giving rise to plaintiff's claims take place in another forum, that weighs heavily in favor of transfer." *Hamilton v. Nochimson*, No. CIV.A. 09-CV-2196, 2009 WL 2195138, at *3 (E.D. Pa. July 21, 2009); *Hayes v. Transcor Am., LLC*, No.

7

CIV.A. 08-293, 2009 WL 1795309, at *4 (E.D. Pa. June 23, 2009). Plaintiffs allege, in Count I of the Complaint, that Defendants Account Control Technology, Inc., Transworld Systems, Inc., and Performant Recovery, Inc. violated the Fair Debt Collection Practices Act (the "FDCPA"). (Compl. ¶¶ 42-44, ECF No. 1.) Courts reviewing claims under the FDCPA have determined that a "claim arises in the district in which the plaintiff received the offending communication or debt collection letter." *Cable v. Allied Interstate, Inc.*, No. 12-CV-96-JD, 2012 WL 1671350, at *3 (E.D. Pa. May 11, 2012) (quoting *Apostolou v. Mann Bracken, LLC*, No. CIV. A. 07-4950 PGS, 2009 WL 1312927, at *11 (D.N.J. May 1, 2009)); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (holding that venue in an action under FDCPA was proper where consumer resided and where debt collection letter had been sent). Here, a "Notice Prior to Wage Withholding" had been issued from Defendant PHEAA's office in the Middle District to Plaintiff Jason Alers, presumably at his residence within the Middle District. (Morrison Decl. ¶¶ 6-7, 13, ECF No. 31-4.) Relatedly, Plaintiff Jason Alers' wages were garnished in the Middle District. (*Id.*) Pursuant to these procedures, Plaintiff Kevin Crawford would have likely received a similar notice, presumably at his residence within the District of Montana. The Eastern District is only implicated based on speculation that a great and disproportionate number of potential class members will likely reside in the district. (Opp., ECF No. 40, Pg. 1.) Because the more definitive and ascertainable acts giving rise to Plaintiffs' claims took place in the Middle District of Pennsylvania (at least when compared to the alleged and more speculative acts in the Eastern District), the third factor weighs slightly *in favor* of transfer.

### 4. Private Factor #4: Convenience of the Parties

The fourth private factor analyzes the convenience of the parties as indicated by their relative physical and financial condition. Both Parties have claimed that their desired forum would

be more convenient. On the one hand, Plaintiffs are willing to commute from Harrisburg and Montana to litigate this case in the Eastern District. On the other hand, the three out-of-state Defendants prefer to travel to the Middle District to litigate this case. Neither Plaintiffs nor Defendants have made any claims around financial conditions that would prevent them from attending or participating in a trial in either the Eastern District or the Middle District. Thus, this Court concludes that this factor does not weigh in either Party's favor, as neither forum, based on the preferences of the Parties, is likely to be substantially or inherently more convenient than the other.

### 5. Private Factor #5: Convenience of the Witnesses

The fifth private factor focuses on the convenience of the witnesses. In ruling on a 1404(a) motion, a court may consider the convenience of the witnesses, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Additionally, Defendants have "the burden of identifying witnesses who would be unavailable at trial." *Brenner v. Consol. Rail Corp.*, No. CIV A 09-CV-1574, 2009 WL 2710241, at *3 (E.D. Pa. Aug. 26, 2009). Defendant PHEAA only notes that all of its likely witnesses reside in the Middle District and that these witnesses would be inconvenienced by the approximately 100-mile trek to the Eastern District. (PHEAA Mot. to Transfer, ECF No. 31, Pgs. 8-9.) Nothing in Defendants' Motions suggests that these witnesses might be unavailable for trial in the Eastern District. Because neither Party has identified witnesses who may be unavailable for trial in either the Eastern District or the Middle District, this factor does not weigh in favor of either Party.

### 6. Private Factor #6: Location of Books and Records

The sixth and final private factor contemplates the location of books and records and their general availability. A court may consider the location of books and records, but only "to the

9

extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Defendant PHEAA merely highlights how, "[a]ll of PHEAA's books and records are located in the Middle District, and the other defendants' books and records are located outside of the Eastern District." (PHEAA Mot. to Transfer, ECF No. 31, Pgs. 8.)  However, because neither Party has identified books or records that could not be produced in either the Eastern District or the Middle District, this factor also does not weigh in favor of either Party.

This Memorandum next reviews the six (6) public factors in turn.

### 1. Public Factor #1: Enforceability of Judgment

Neither Party makes any argument as to the first public factor: the enforceability of the judgment.  Thus, the Court declines to address it.

### 2. Public Factor #2: Practical Considerations

The second public factor examines the practical considerations that would make the trial easy, expeditious, or inexpensive.  As noted above, Defendant PHEAA asserts that all of its likely witnesses reside in the Middle District, and that a substantial portion of Plaintiffs' claims arise in the Middle District.  (PHEAA Mot. to Transfer, ECF No. 31, Pgs. 8-9.)  Plaintiffs note that the Eastern District is perhaps more convenient than the Middle District—given Defendants' business presence in the Eastern District and the fact that the judges in both districts are equally equipped to handle the applicable law and the underlying dispute.  (Opp., ECF. No. 40, Pg. 14.)  However, one of the two potential classes in this case (Class A) would focus solely on how Defendant PHEAA improperly garnished wages at a rate higher than ten percent (10%).  (Compl. ¶ 32, ECF No. 1.)  Additionally, Defendants assert that the entire process and procedure for garnishing wages took place at Defendant PHEAA's headquarters in the Middle District. (Morrison Decl. ¶¶ 5-13, ECF No. 31-4.)  Thus, this Court concludes that this factor weighs slightly *in favor* of transfer.

### 3. Public Factor #3: Court Congestion

The third public factor centers on the relative administrative difficulty in the two fora resulting from court congestion. As of March 31, 2022, there were 8,235 civil cases pending in the Eastern District and 2,631 civil cases pending in the Middle District.[4] Given this substantial difference in caseload and court congestion, this factor weighs *in favor* of transfer.

### 4. Public Factor #4: Local Interest

The fourth public factor focuses on the local interest in deciding local controversies at home. As the Eastern District has previously instructed, when allegations are "national in character and involve conduct affecting consumers…in all states…the case cannot be characterized as a 'local controversy.'" *Stephen L. LaFrance Holding Inc. v. Nat'l Milk Producers Fed'n*, No. CIV.A. 12-70, 2012 WL 3104837, at *5 (E.D. Pa. July 31, 2012). Thus, the national nature of the claims in that case compelled the Eastern District to deem the fourth public factor as neutral. *Id*. Here, Plaintiffs seek to certify two classes:

> **Class A:** All persons residing in the United States whose pay was garnished by PHEAA during the Class Period at a rate higher than 10% during any given pay period.
>
> **Class B:** All persons residing in the United States whose pay was garnished by a Debt Collector Defendant acting on behalf of PHEAA during the Class Period.

(Compl. ¶ 32, ECF No. 1.) For the same reasons, this Court concludes that the national nature of this class action does not make this a "local controversy" and, therefore, is neutral (*i.e.*, the factor does not weigh in favor of either Party).

---

[4] Federal Judicial Caseload Statistics, Table C: U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending March 31, 2021 and 2022, available at https://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2022/03/31.

### 5. Public Factors #5: Public Policies of the Fora

Neither Party makes any argument as to the fifth public factor: the public policies of the fora. Thus, the Court declines to address it.

### 6. Public Factor #6: Familiarity with State Law (Diversity Cases)

Neither Party makes any argument as to the sixth public factor: the familiarity of the trial judge with the applicable state law in diversity cases. This factor is inapplicable as this case involves federal question jurisdiction—*i.e.,* this is not a diversity jurisdiction case. Thus, the Court declines to address it.

### C. Conclusion

Although Plaintiffs' choice of forum (private factor #1) is entitled to deference, such deference is diminished by the fact that Plaintiff Jason Alers resides in the Middle District, there are only speculative assumptions about the potential class that would substantially implicate the Eastern District, and this case involves a class action lawsuit. Relatedly, a number of private and public factors also weigh against Plaintiffs' choice of the Eastern District as the most appropriate forum: Defendants prefer to litigate this case in the Middle District (private factor #2), a substantial portion of the underlying claims arose in the Middle District (private factor #3), practical considerations suggest that the presence of likely witnesses in the Middle District and an entire class dedicated to litigating Defendant PHEAA's garnishment practices and procedures at its headquarters in the Middle District slightly favors the Middle District (public factor #2), and, finally, the Middle District is substantially less congested than the Eastern District with respect to pending civil cases (public factor #3).

Taken together, this case seemingly has more connections to the Middle District than the Eastern District and should, therefore, be heard in the Middle District of Pennsylvania. This Court,

thus, concludes that Defendants have met their burden and sufficiently demonstrated that this case should be transferred to the Middle District of Pennsylvania—in the interest of justice.

## V.     CONCLUSION

For the reasons stated above, the Court grants Defendants' Motions to Transfer Venue pursuant to 28 U.S.C. 1404(a).

An appropriate Order follows.

BY THE COURT:

**       /s/ John Milton Younge       **
**JUDGE JOHN MILTON YOUNGE**
