## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON ALERS, et al.,** | : | **Civil No. 1:22-CV-1357** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA HIGHER** | : | |
| **EDUCATION ASSISTANCE AGENCY,** | : | |
| **et al.** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This case, which comes before us for consideration of several motions to dismiss as well as a motion for sanctions, calls upon us to foray into the specialized and arcane field of student loan law and consider the interplay of federal and state statutes, each of which sets somewhat different benchmarks and thresholds for lawful collection of student loan debts. In this regard, the plaintiffs have filed what they describe as a putative class action lawsuit, asserting that the loan collection activities undertaken by the Pennsylvania Higher Education Assistance Agency (PHEAA), and certain loan servicing firms with whom it contracts, violated the provisions of state law. The moving defendants, PHEAA and one of its contractors,

Account Control Technology, Inc., have moved to dismiss this complaint, arguing *inter ali*a that federal law controls the scope of their collection activities and specifically authorizes the practices which the plaintiffs allege transgress state statutes. Thus, the pending motions present us with the paradigm of a purely legal question which is appropriately the subject of a dispositive motion in the nature of a motion to dismiss. Additionally, PHEAA has underscored its confidence in the merits of its legal defenses to this complaint by also filing a motion which seeks to impose Rule 11 sanctions upon the plaintiffs for filing what PHEAA regards as a frivolous and meritless claim.

These motions are fully briefed and are, therefore, ripe for resolution. As discussed in greater detail below, upon consideration it is recommended that the plaintiffs' complaint be dismissed as federal law preempts and governs this field. However, because the interplay of state and federal law in this field was not so clear and free from doubt as to cast this complaint in a frivolous light, it is further recommended that PHEAA's motion for sanctions be denied.

## II.    <u>Statement of Facts and of the Case</u>

The well-pleaded facts in the plaintiffs' complaint, which govern our consideration of these motions to dismiss, recite that that the named plaintiffs in this putative class action, Jason Alers and Kevin Crawford, were residents of Pennsylvania and Montana. (Doc. 1, ¶¶ 16, 17). Alers and Crawford were also

student loan debtors who were delinquent in the payment of their student loan debts in 2017 and 2019. (Id.) Aler's and Crawford's delinquent student loans were being serviced by the Pennsylvania Higher Education Assistance Agency, or PHEAA, a national servicer of student loans. (Id., ¶¶ 16, 17, 18). As part of its student loan servicing portfolio, PHEAA would contract with various collection agencies, including Performant Recovery, Inc., Transworld Systems, Inc., and Account Control Technology, Inc., to collect on defaulted and delinquent loans. (Id., ¶¶ 18-22).

According to Mr. Aler, he:

> [W]as advised by PHEAA (through his employer's human resources department) that his wages would be garnished, the rate at which they would be garnished, and that such garnishment was lawful. Mr. Alers' wages were ultimately garnished from August 2017 through June 2018 at a rate in excess of 10% of his pay during a given pay period. Based on PHEAA's material misrepresentations, omissions, and conduct, as well as its superior position of knowledge and authority with respect to student loans, Mr. Alers believed that it was lawful for PHEAA to garnish his wages at a rate in excess of 10% of his pay. In reliance thereof, Mr. Alers took no steps to challenge garnishment of his wages; had he known the truth, Mr. Alers would have challenged PHEAA's garnishment of his wages sooner and before any money was taken from him. Mr. Alers' student loan is currently in good standing and in repayment.

(Id., ¶ 16).

Mr. Crawford makes similar allegations against the defendants, alleging that he:

3

[W]as advised by Defendants that his wages would be garnished, at a rate not exceeding 15% of his pay, and that such garnishment was lawful. Plaintiff Crawford's wages were ultimately garnished from January 2020 to February 2020, when he was laid off, at a rate in excess of 10% of his pay during a given pay period. Relying on PHEAA's material misrepresentations, omissions, and conduct, as well as PHEAA's superior position of knowledge and authority with respect to student loans, Mr. Crawford believed that it was lawful for PHEAA, through the use of its agent the Debt Collector Defendant Performant, to garnish his wages at a rate in excess of 10% of his pay. In reliance thereof, Mr. Crawford took no steps to challenge garnishment of his wages; had he known the truth, Mr. Crawford would have challenged garnishment of his wages sooner and perhaps before any money was taken from him.

(Id., ¶ 17).

These averments form the gravamen of the plaintiffs' multi-faceted complaint, which alleges a host of claims and causes of action arising out of the conduct and representations allegedly engaged in by PHEAA and the other defendants. In this regard, the plaintiffs' sweeping class action claims stem from their reading of the Pennsylvania statutes that established PHEAA and conferred upon that agency student loan servicing responsibilities. As the plaintiffs explain in their complaint:

28. The Act that created PHEAA in 1963 conferred upon the public corporation twelve powers and duties. One of those powers is "[t]o execute by writ of execution upon wages, salaries or commissions in the hands of an employer or any other person in order to enforce money judgments for the repayment of all loans authorized, serviced, insured, made, funded or guaranteed under this act or Federal law[.]"

(Id., ¶ 28) (footnotes omitted).

4

As a juridical creature whose existence is defined by state statute, the plaintiffs allege that PHEAA's powers are also exclusively defined by state law, and specifically aver that PHEAA's collections activities as described in the complaint violate state law in two respects.  According to the plaintiffs:

29. The Commonwealth of Pennsylvania, however, tempered this power by barring PHEAA from assigning its authority to garnish wages and by restricting the rate at which it is authorized to garnish borrowers' wages:

> Provided, however, That such power of execution may not be assigned to any other person or agency nor be employed for any other purpose by the agency. Such power of execution may be exercised at the discretion of the agency, but ***under no circumstances may an amount in excess of ten percent of the pay of an obligor be subject to execution during any given pay period***.

30. Despite these limitations, which exist for the protection of borrowers, PHEAA and the Debt Collector Defendants garnish borrowers' wages in excess of ten percent of their pay. For example, in certain Administrative Wage Garnishment orders to borrowers' employers, PHEAA directed employers to deduct an amount that does not exceed fifteen percent (15%) of the debtor's disposable pay. In fact, on the AES website itself, PHEAA explicitly states that it is allowed "to garnish up to 15% of [a borrower's] take home pay as a means of recouping the outstanding balance of [his/her] loans."

31. Moreover, PHEAA routinely assigns its power of garnishment to Debt Collector Defendants.

(Id., ¶¶ 29-31) (footnotes omitted) (emphasis in original).

Thus, the premise underlying this lawsuit is the plaintiffs' contention that, by garnishing wages in excess of 10% and utilizing third-party debt collectors, PHEAA

is violating the express limitations on its legal authorities set by the enabling legislation that created this agency. From this legal premise numerous claims and causes of action spring forth. According to the plaintiffs, the alleged *ultra vires* debt collection activities undertaken by PHEAA, acting through these debt collectors, constitute violations of Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. § 2270.1 (FCEUA), as well as Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 (UTPCPL). In addition, the plaintiff's assert that these actions by PHEAA and the debt collectors support state common law claims for negligence, negligence *per se*, unjust enrichment, and conversion. (Doc. 1, Counts II, III, IV, V, VIII, and IX).

Yet, while these alleged violations of state law form the crux of the plaintiffs' complaint, the actual garnishment notices identified by the plaintiffs in their complaint plainly rely upon another, independent legal basis rooted in federal law for garnishing funds to repay these defaulted loans. These garnishment notices expressly state that PHEAA is proceeding based upon authority granted to it by the federal Higher Education Act, 20 U.S.C. § 1095a, in pursuing these administrative garnishments, and specifically notes that federal law permits garnishment of up to 15% of the plaintiffs' wages, a garnishment rate which exceeds the 10% rate set by state law for writs of execution. (Docs. 62-1, 62-2).

While the plaintiffs' complaint repeatedly acknowledges that PHEAA acted based upon an administrative garnishment process when it garnished these wages, this latent conflict between state and federal law is not further addressed in the plaintiffs' complaint. This conflict is, however, central to the defendants' legal challenges to this complaint. Thus, PHEAA and one of the debt collection defendants, Account Control Technology, have now filed three motions to dismiss this complaint under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (Docs. 56, 61, and 65). In these motions the defendants argue that the legal premise underlying this complaint is fatally flawed and rests upon a basic misapprehension of Pennsylvania law, coupled with a failure to view the activities of PHEAA and these debt collectors through then broader context of a student debt collection industry which is governed both by state a federal law. According to the defendants, when state law is properly construed and understood in the context of comprehensive federal statutes governing higher education, the plaintiffs' claims fail as a matter of law because PHEAA's use of administrative garnishments and third-party debt collectors to garnish up to 15% of a defaulting debtor's wages is specifically authorized by law. The defendants further contend that many of the plaintiffs' claims are otherwise time-barred, meritless, or have not been properly exhausted as required by federal statutes. In addition, Account Control Technology also contends that the complaint in its current form fails as to this debt collector because the pleading

contains no allegations of any action whatsoever by Account Control Technology relating to any of the named plaintiffs. Finally, PHEAA has filed a motion for Rule 11 sanctions arguing that the plaintiffs should be subject to sanctions for filing what, in PHEAA's view, was a frivolous complaint. (Doc. 69).

These motions are fully briefed and are, therefore, ripe for resolution. For the reasons set forth below, it is recommended as follows: Defendant PHEAA and Account Control Technology, Inc.'s motions to dismiss (Docs. 61 and 65) should be GRANTED. In light of these dismissal of these defendants, Defendant PHEAA's second motion to dismiss for lack of subject matter jurisdiction, (Doc. 56), should be DEEMED MOOT. Finally Defendant PHEAA's motion for sanctions, (Doc. 69), should be DENIED.

## III.  <u>Discussion</u>

### A. <u>Standard of Review – Motions to Dismiss, Rule 12(b)(6) and 12 (b)(1)</u>

The defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "failure to state a claim upon which relief can be granted." A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States

Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

> As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." Twombly, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
> when the factual pleadings "allow[ ] the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." Iqbal,
> 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).
> This standard requires showing "more than a sheer possibility that a
> defendant has acted unlawfully." Id. A complaint which pleads facts
> "merely consistent with" a defendant's liability, [ ] "stops short of the
> line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in

determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan, 20 F.3d at 1261.

In addition, PHEAA has moved to dismiss this complaint pursuant to Rule 12(b)(1), which permits the dismissal of an action for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. See id.; PBGC v. White, 998 F.2d 1192, 1196 (3d Cir. 1993). In reviewing a factual attack, the court may consider evidence outside the pleadings. See Gotha v. United States, 115 F.3d 176, 178–79 (3d Cir. 1997) (citing Mortensen, 549 F.2d at 891). Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (footnote omitted) holding modified on other gr'ds by Simon v. United States, 341 F.3d 193 (3d Cir. 2003). As the Court of Appeals has observed:

> In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." In re Schering Plough Corp., 678 F.3d at 243 (quoting Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000)) (internal quotation marks omitted). Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor

of the nonmoving party. <u>Id</u>. This is in marked contrast to the standard of review applicable to a factual attack, in which a court may weigh and "consider evidence outside the pleadings." <u>Gould Elecs. Inc</u>., 220 F.3d at 176 (citing <u>Gotha v. United States</u>, 115 F.3d 176, 178–79 (3d Cir.1997)).

<u>Constitution Party of Pennsylvania v. Aichele</u>, 757 F.3d 347, 358 (3d Cir. 2014).

When considering a facial challenge to the sufficiency of a complaint, we are mindful of one other consideration. On occasion, plaintiffs attempt to supplement a complaint by setting forth a more detailed factual narrative of their claims in the brief in opposition to the instant motion. Such efforts are unavailing. Rather, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." <u>Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988) (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir. 1984)).

In contrast, when presented with a factual challenge to a complaint under Rule 12(b)(1), we are cautioned that:

> A factual challenge contests the existence of subject matter jurisdiction, apart from any pleadings. <u>Id</u>. In reviewing a factual challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," even where disputed material facts exist. <u>Mortensen</u>, 549 F.2d at 891. In a factual challenge, the plaintiff has the burden of persuasion to show that jurisdiction exists. <u>Gould</u>, 220 F.3d at 178; <u>Mortensen</u>, 549 F.2d at 891. If the defendant presents evidence contesting any allegations in the pleadings, the presumption of truthfulness does not attach to the plaintiff's allegations and the plaintiff may present facts by affidavit or deposition or in an evidentiary hearing. <u>Gould</u>, 220 F.3d at 177; <u>Mortensen</u>, 549 F.2d at 891, 893 n. 18. "[I]f there is a dispute of material fact, the court must conduct a plenary trial

on the contested facts prior to making a jurisdictional determination." <u>Gould</u>, 220 F.3d at 177.

<u>Moyer Packing Co. v. United States</u>, 567 F.Supp.2d 737, 748 (E.D. Pa. 2008).

It is against these legal benchmarks that we consider these motions to dismiss.

### B. **PHEAA and Account Control Technology, Inc., Should Be Dismissed from the Lawsuit.**

#### 1.  **PHEAA's Rule 12(b)(6) Motion Should Be Granted.**

At bottom, in these motions to dismiss the parties invite us to engage in one of the fundamental attributes of judicial decision making: construing, rationalizing, and harmonizing statutes. In undertaking this task, we conclude that the plaintiffs' claims against PHEAA fail as a matter of law because the legal premise underlying the complaint—the notion that PHEAA may not garnish more than 10% of a debtor's wages and may not employ collection agents to assist it—both misconstrues the relevant provisions of state law and fails to acknowledged the interplay of state and federal law in this field.

At the outset, in considering these claims it is important to recognize that PHEAA enjoys a dual status under the law. To be sure, at one level PHEAA is a creature of state law, created through an enactment of the state legislature. 24 Pa. Con. Stat. Ann. § 5104. In this capacity, PHEAA has certain student loan debt collection responsibilities that are prescribed by state law. <u>See</u> 24 Pa. Con. Stat. Ann. § 5104(11). However, under the federal Higher Education Act, PHEAA also serves

as a student loan guarantee agency. In this capacity, federal law prescribes

additional, and occasionally different, student loan debt collection duties upon

PHEAA. As one court has explained:

> Guaranty agencies are either states or nonprofit organizations that agree with the Secretary to administer a loan-guarantee program under the Higher Education Act. 20 U.S.C. § 1078(b)(1); 34 C.F.R. § 682.200(b). Under the agreements, these agencies guarantee private lenders against loss when a borrower defaults on a federal student loan. 34 C.F.R. § 682.100(b)(1). If a borrower defaults, the guaranty agency pays the default claim to the lender and is reimbursed by the Secretary. Id.; 20 U.S.C. § 1078(c)(1)(A). The guaranty agency must then attempt to collect the unpaid loan from the borrower on behalf of the Secretary. 34 C.F.R. § 682.410(b)(6)(i); see 20 U.S.C. § 1078(c)(2)(A), (c)(6). The guaranty agency returns most of any payments it collects to the Secretary but may keep a percentage of the payments for use in its operating fund. 20 U.S.C. §§ 1078(c)(2)(D), (c)(6), 1072b(c)(5).
>
> Because guaranty agencies must recover and safeguard money that belongs to the federal government, federal law regulates their relationships with the Secretary. The Higher Education Act requires the agreements between guaranty agencies and the Secretary to establish procedures "to protect the United States from the risk of unreasonable loss" and "to assure that due diligence will be exercised in the collection of loans insured under the program." Id. § 1078(c)(2)(A). The implementing regulations describe the relationship between a guaranty agency and the Secretary as that of a fiduciary. 34 C.F.R. § 682.419(a) ("The guaranty agency must exercise the level of care required of a fiduciary charged with the duty of protecting, investing, and administering the money of others.").

Darrisaw v. Pennsylvania Higher Educ. Assistance Agency, 949 F.3d 1302, 1305

(11th Cir. 2020). Therefore a fully-informed assessment of the legal viability of this

complaint requires us to first consider whether the plaintiffs' complaint correctly

construes the limitations on PHEAA's debt collection activities under state law.

Once we complete this task, we must then assess whether PHEAA's activities with respect to the plaintiff student loan debtors were nonetheless authorized by federal law in PHEAA's capacity as a student loan guarantee agency. When we undertake this dual analysis, we find that the legal premises underlying the plaintiffs' complaint are wanting on both of these scores.

At the outset, when we critically assess the plaintiffs' claims through the lens of state law, we believe that those claims are based upon a misapprehension regarding the reach of the pertinent state statutes. As we have noted, the complaint is replete with references acknowledging that the wage garnishments experienced by Alers and Crawford were administrative garnishments. (Doc. 1, ¶¶ 30, 112, 113, 128, 129). This fact, which is conceded in the complaint, has legal significance as we examine the provisions of state law which the plaintiffs allege were breached by PHEAA and the other defendants.

The lynchpin of the plaintiffs' claims is their assertion that PHEAA's enabling legislation forbids this agency from using third party debt collectors or garnishing more than 10% of a defaulting debtors' wages in this factual setting where it is undisputed that the wage garnishment was conducted through an administrative process. In this regard, we believe that the plaintiffs have misread the pertinent state statute in at least two respects.

First, the plaintiffs' complaint misconstrues the reach of the specific state statutory provision which the plaintiffs contend was violated by PHEAA, 24 Pa. Con. Stat. § 5104(11). The statute provides that PHEAA is empowered:

> (11) To execute by writ of execution upon wages, salaries or commissions in the hands of an employer or any other person in order to enforce money judgments for the repayment of all loans authorized, serviced, insured, made, funded or guaranteed under this act or Federal law: Provided, however, That such power of execution may not be assigned to any other person or agency nor be employed for any other purpose by the agency. Such power of execution may be exercised at the discretion of the agency, but under no circumstances may an amount in excess of ten percent of the pay of an obligor be subject to execution during any given pay period.

24 Pa. Con. Stat. § 5104 (11). The plaintiffs' interpretation of this provision of state law focuses upon the limitations it imposes upon garnishments, but fails to take into account the statute's prefatory language which plainly states that those limitations apply only to efforts to "execute *by writ of execution* upon wages, salaries or commissions in the hands of an employer or any other person *in order to enforce money judgments* for the repayment of all loans authorized." Id. (emphasis added).

By ignoring this limiting language, the plaintiffs misconstrue the reach of this statute. By its terms § 5104(11) only restricts PHEAA's use of writs of execution to enforce money judgments. A writ of execution is a term of art under Pennsylvania law. It refers to the process by which a litigant may satisfy a judgment entered in state court. Pa. R. Civ. P. 3102. A "judgment," in turn, "means a judgment or order requiring the payment of money or adjudicating the right to possession in an action

18

of replevin, . . . entered in any court which is subject to these rules, either originally or upon transcript or certification from another court within the same county." Pa. R. Civ. P. 3001. Upon the entry of a judgment by a court, "[t]he writ of execution commands the sheriff, the officer who serves and enforces process for Pennsylvania's courts of common pleas, to seize any property of the defendant the plaintiff has described or, if a garnishee is named, to serve the writ upon the garnishee." <u>Jordan</u>, 20 F.3d at 1262 (citing Pa. R. Civ. P. 3103, 3108, 3111). Thus, the limitations on PHEAA's collection powers set forth in § 5014(11), which form the crux of the plaintiffs' case, only apply to the use of writs of execution to collect court ordered money judgments.

But that is not what happened in this case. PHEAA did not attempt to use a writ of execution to recover on a court-ordered money judgment under state law. Rather, it is undisputed that PHEAA, acting as a guaranty agency under the federal Higher Education Act, used an administrative garnishment procedure to recover the moneys owed by Alers and Crawford. This distinction between the authorized state and federal procedures, a distinction which is not fully recognized by the plaintiffs' complaint, exposes a second fatal flaw in their case. Moreover, and more fundamentally, the plaintiffs' interpretation of this state statute ignores an important caveat in that statute. PHEAA's enabling legislation specifically states that:

> In furtherance of the purposes set forth in this act, the board of directors shall have the following powers:

19

(1) To make, guarantee, undertake commitments to make or acquire and participate with lending or postsecondary institutions in the making of loans, service or otherwise provide loans of money upon such terms and conditions as the board may prescribe within the limitations contained herein *or applicable Federal law*, . . . .

24 Pa. Stat. Ann. § 5104 (1) (emphasis added). Thus, the plaintiffs' interpretation of this state law fails to take into account the fact that, by its terms, PHEAA is also authorized to take actions which are permitted under applicable federal laws, actions that include collection activities authorized under the federal Higher Education Act. Therefore, any interpretation of this state statute must, in turn, examine whether the questioned practice of using administrative garnishments to garnish up to 15% of a delinquent debtor's wages is permitted by federal law.

Federal law expressly authorizes this type of administrative garnishment and clearly states that: "*Notwithstanding any provision of State law*, a guaranty agency, or the Secretary in the case of loans made, insured or guaranteed under this subchapter that are held by the Secretary, may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment. . . ." 20 U.S.C. § 1095a. The amount of this administrative garnishment may exceed 10% of the debtor's wages but may not exceed 15% of disposable pay, except that a greater percentage may be deducted with the written consent of the individual involved. 20 U.S.C. § 1095a (1). Moreover, this federal statute and its implementing regulations make it clear that a

guaranty agency like PHEAA may pursue this collections course without first obtaining a court order or relying upon state law judgment execution procedures. As one court has aptly observed:

> The Act and accompanying federal regulations promulgated by the Secretary of Education create an administrative garnishment procedure, alleviating the guarantors . . . of the requirement to file a lawsuit, obtain a judgment, and then pursue collection by way of judicial garnishment. Id. Rather, the HEA permits guarantors, . . . , to administratively garnish a debtor's wages without going to court. Id.; 20 USC § 1095a.

Maynard v. Premiere Credit of N. Am., LLC, No. C06-5488RJB, 2007 WL 1128082, at *3 (W.D. Wash. Apr. 16, 2007). In lieu of these state judgment collection procedures, the Higher Education Act provides for an administrative process that student loan debtors like Alers and Crawford may pursue if they wish to challenge a garnishment order. 20 U.S.C. § 1095a(a)-(c).

That is precisely what happened here. In accordance with federal law, Alers and Crawford received notice of administrative garnishments. While those garnishments may have exceeded 10% of the debtors' wages, there is no indication that they exceeded the federally mandated ceiling of 15% of the debtors' disposable income. Since PHEAA's enabling statute expressly allowed PHEAA to engage in collection activities in accordance with "applicable Federal law," 24 Pa. Stat. Ann. § 5104 (1), and federal law plainly provides that "[n]otwithstanding any provision of State law, a guaranty agency, . . . may garnish the disposable pay of an individual

21

to collect the amount owed by the individual," 20 U.S.C. § 1095a,  the use of this federally mandated garnishment procedure by PHEAA is perfectly congruent with the dictates of both state and federal law. Therefore, when these statutes are correctly construed and harmonized with one another, the legal premise upon which the plaintiffs' complaint rests—the contention that PHEAA's enabling legislation forbids this agency from using third party debt collectors or garnishing more than 10% of a defaulting debtors' wages—collapses.

While the plaintiffs' complaint fails based upon this straightforward interpretation of these statutes, principles of preemption also dictate the dismissal of these claims. The preemption doctrine is rooted in constitutional considerations stemming from the Supremacy Clause and the principles which guide preemption analysis can be simply stated:

> Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption. Hillsborough Cnty. v. Automated Med. Labs., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law. Id. Field preemption applies where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Id. (internal quotation marks omitted). Conflict preemption nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (internal quotation marks omitted). Federal regulations preempt state laws in the same fashion as congressional statutes. Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); see also Fellner

v. Tri–Union Seafoods, L.L.C., 539 F.3d 237, 243 (3d Cir. 2008) ("Where Congress has delegated the authority to regulate a particular field to an administrative agency, the agency's regulations issued pursuant to that authority have no less preemptive effect than federal statutes, assuming those regulations are a valid exercise of the agency's delegated authority."). Preemption can apply to all forms of state law, including civil actions based on state law. See Holk v. Snapple Beverage Corp., 575 F.3d 329, 331 (3d Cir. 2009).

Farina v. Nokia Inc., 625 F.3d 97, 115 (3d Cir. 2010).

In the instant case, a Congressional intent to preempt state laws governing debt collection of federal student loans by guaranty agencies can clearly be inferred from the language of 20 U.S.C. § 1095a, which provides that "[n]otwithstanding any provision of State law, a guaranty agency, . . . may [administratively] garnish the disposable pay of an individual to collect the amount owed by the individual." 20 U.S.C. § 1095a. (emphasis added). We note that we are not alone in viewing this plain statutory text as evincing an intent to preempt state debt collection statutes and provide a federal pathway for guaranty agencies like PHEAA to use garnishment as a tool to collect monies owed by delinquent student debtors. Quite the contrary, with respect to guaranty agencies, a rising tide of case law holds that § 1095a's clear dictate that these agencies may use federal garnishment procedures "[n]otwithstanding any provision of State law," expressly preempts any state laws to the contrary. See e.g., Chae v. SLM Corp., 593 F.3d 936, 942 (9th Cir. 2010); Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1125 (11th Cir. 2004) (held, the "Notwithstanding any provision of State law" clause preempts only those

provisions of state law that would otherwise prohibit or hinder the ability of a guaranty agency to garnish a debtor's wages); <u>Bennett v. Premiere Credit of N. Am., LLC</u>, 504 F. App'x 872, 879 (11th Cir. 2013) (§1095a preempts Georgia statute); <u>Wheeler v. Premiere Credit of N. Am., LLC</u>, 80 F. Supp. 3d 1108, 1116 (S.D. Cal. 2015); <u>Savage v. Scales</u>, 310 F. Supp. 2d 122, 136 (D.D.C. 2004) (§ 1095a preempts D.C. statute); <u>Nelson v. Diversified Collection Servs. Inc.</u>, 961 F. Supp. 863, 872 (D. Md. 1997) (§ 1095a preempts Maryland statute).

In our view, the plaintiffs' efforts to avoid this express preemption are unpersuasive. For example, the plaintiffs attempt to distinguish this body of case law by suggesting that while this preemption principle may apply to state debt collection laws of general application, it should not extend to the debt collection restrictions incorporated into PHEAA's enabling statute. There are at least two problems with this proposition. First, as we have previously noted, by its terms the Pennsylvania statute does not forbid PHEAA from utilizing these federally authorized student loan recovery tools. Quite the contrary, the state statute authorizes PHEAA to collect these debts in accordance with "applicable Federal law." 24 Pa. Stat. Ann. § 5104 (1). Second, the plaintiffs' argument, if embraced by this court, would turn the preemption principle on its head by suggesting that the question of federal preemption is controlled by the decision of state legislatures regarding where to place conflicting state laws in the state legal code. Simply put, the scope of federal

preemption cannot be dictated by the choices made by state legislatures. It is instead emphatically a matter of federal law governed by federal legal benchmarks, all of which have been met in this case.

Thus, tenets of statutory construction and principles of preemption all lead to the conclusion that PHEAA as a guaranty agency under federal law may resort to the administrative garnishment process prescribed by federal law without regard for the limitations that state law sets on another unrelated debt recovery tool, a writ of execution following the entry of a court ordered judgment. This conclusion, in turn, is fatal to the plaintiffs' state law claims against PHEAA.

For example, under Pennsylvania law the elements of a negligence claim are: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Est. of Swift v. Ne. Hosp. of Philadelphia, 456 Pa. Super. 330, 335, 690 A.2d 719, 722 (1997). Likewise, under Pennsylvania law, the violation of a statute which proximately causes an injury are essential components to a claim of negligence *per se*. Ramalingam v. Keller Williams Realty Grp., Inc., 2015 PA Super 172, 121 A.3d 1034, 1043 (2015). Here, we have concluded that the debt collection activities undertaken by PHEAA are specifically authorized by federal law. Therefore, the essential elements of these state torts, which require the breach of a statute or legal duty, are absent and these claims fail as a matter of law.

The plaintiffs' common law conversion and unjust enrichment claims suffer a similar fate. "Under Pennsylvania law, the elements to the tort of conversion are: (1) deprivation of another's right of property in, or use or possession of, (2) a chattel, (3) without the owner's consent, and (4) *without lawful justification*." Lankard v. Laurel Mountain Midstream Operating, LLC, No. 1367 WDA 2016, 2017 WL 2539844, at *8 (Pa. Super. Ct. June 12, 2017) (emphasis added). In the same vein, unjust enrichment is an equitable doctrine under Pennsylvania law which requires a showing that a defendant has accepted and retained some benefits from the plaintiff under circumstances that would be inequitable for defendant to retain the benefits. Mitchell v. Moore, 729 A.2d 1200, 1203 (1999). In a case such as this, where PHEAA has acted in accordance with federal law in garnishing these delinquent debtors' wages, the essential elements of these torts cannot be satisfied. Simply put, PHEAA's actions are taken with a lawful justification, and there is nothing inequitable about PHEAA recovering student loan debts using a tool specifically crafted under federal law for this purpose. Therefore, these claims also fail.

Finally, under principles of preemption, the plaintiffs' proposed statutory claims under Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. § 2270.1 (FCEUA) and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §201-1 (UTPCPL) must give way in the face of

PHEAA's express authorization under federal law to utilize these collection tools.

As one court has aptly observed on this score, a plaintiff's:

> [C]laim that PHEAA violated Pennsylvania's FCEUA fails as a matter
> of law. "[T]he FCEUA expressly excludes from the term 'debt' any
> 'amount owed to the United States or the Commonwealth.' " Linko v.
> Am. Educ. Servs., No. 12–355, 2012 WL 1439052, at *4 (E.D.Pa.
> Apr.26, 2012) (quoting 73 Pa. Cons.Stat. Ann. § 2270.3). As stated
> above, PHEAA is a statutorily-created entity of the Commonwealth
> whose purpose is "to improve higher education opportunities ... by
> enabling [PHEAA], lenders and postsecondary institutions to make
> loans available to students and parents for postsecondary education
> purposes." 24 Pa. Cons.Stat. Ann. § 5102. PHEAA, as guarantor of
> Keller's student loans, was attempting to collect on the debt owed to the
> Commonwealth as a result of her default. See 24 Pa. Cons.Stat. Ann. §
> 5104.3. "Thus, the debt subject to collection is owed to the
> Commonwealth and expressly excluded from
> the FCEUA." Linko, 2012 WL 1439052, at *4.

Keller v. GC Servs., L.P., No. 13-CV-1654, 2013 WL 3213338, at *3 (E.D. Pa. June

26, 2013). Likewise, similar state statutory claims brought against PHEAA under

the UTPCPL have been deemed legally unavailing. Id.

In sum, the plaintiffs' claims against PHEAA ultimately rest upon pillars of

sand, a misconception regarding the scope of state law coupled with a

misunderstanding regarding how federal and state laws apply to PHEAA in this debt

collection context. Since these legal pillars collapse under close scrutiny, PHEAA's

Rule 12(b)(6) motion to dismiss (Doc. 61) should be granted.[1]

---

[1] We note that PHEAA has also filed a motion to dismiss for lack of subject matter
jurisdiction under Rule 12(b)(1). (Doc. 56). This motion argues that the plaintiffs
were required under the Higher Education Act to exhaust their administrative

## 2. **Account Control Technology's Motion to Dismiss Should be Granted.**

Account Control Technology, Inc., one of the third party debt collectors allegedly hired by PHEAA, has also filed a motion to dismiss this complaint. (Doc. 65). Recognizing that its liability, if any, would be largely derivative from the liability of its contractual partner PHEAA, Account Control Technology adopts the commonsense view that to the extent that any of these claims fail against PHEAA, it too would be entitled to dismissal of those claims. (Id., at 1) ("ACT incorporates herein by reference the accompanying memorandum of law and the arguments made in the memorandums of law submitted by the Pennsylvania Higher Education Assistance Agency in support of its Motions to Dismiss"). But Account Control Technology's contentions in this motion go beyond merely parroting PHEAA's motion to dismiss. Noting that the plaintiffs' complaint is completely devoid of any well-pleaded allegations that Account Control Technology had any involvement whatsoever in the servicing of the named plaintiffs' loans, the defendant argues that Aler's and Crawford's claims against Account Control Technology fail as a matter of law.

---

remedies prior to proceeding into federal court. For their part, the plaintiffs assert that federal claims exhaustion is not necessary here since none of their claims arise under this federal statute. Because we conclude that the plaintiffs' state law claims against PHEAA all fail on their merits, it is recommended that the court decline to address these otherwise arcane jurisdictional questions.

We agree.

At the outset, our conclusion that the plaintiffs' claims against PHEAA are legally infirm would also doom any claims that PHEAA and Account Control Technology are jointly liable for these state law infractions. Moreover, we agree that the complaint contains no well-pleaded allegations indicating any acts or omissions by Account Control Technology with regard to the plaintiffs' loans. On this score the complaint simply asserts that: "Defendant PHEAA is a student loan servicer and manages 20 percent, or about $425 billion, of Americans' outstanding student loan debt. Performant, Transworld, and Account Control (collectively, "Debt Collector Defendants") are debt collectors located in California who have contracted with PHEAA to collect student loan debts on PHEAA's behalf." (Doc. 1, ¶ 2.) Beyond this general averment, there is not a single factual allegation indicating that Account Technology played any role in the collection of the plaintiffs' loans.

This is a fatal shortcoming, since it is well settled that in order to be legally sufficient a complaint must state well-pleaded facts which give rise to a plausible claim for relief. Fowler, 578 F.3d at 210-11. A complaint, like the current pleading, which contains absolutely no well-pleaded factual allegations concerning actions taken by this particular defendant with respect to the plaintiffs by definition fails to meet this test and is, therefore, subject to dismissal.

29

Nor can the plaintiffs save these claims against Account Control Technology by cloaking their lawsuit in the rubric of a putative class action. In this regard, the law is clear. In order to have standing to bring a particular putative class action claim the " 'class representatives must meet Article III standing requirements the moment a complaint is filed.' " Ponzio v. Mercedes-Benz USA, LLC, 447 F. Supp. 3d 194, 222 (D.N.J. 2020) (quoting In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig., 172 F. Supp. 3d 724, 753 (D.N.J. 2016)). At a minimum this standing requirement means that:

> "[A] plaintiff may not maintain an action on behalf of a class against a specific defendant if the plaintiff is unable to assert an individual cause of action against that defendant[,]" "[w]hether for reasons of lack of standing ... or for lack of Rule 23(a)(3) typicality[.]" See Haas v. Pittsburgh Nat. Bank, 526 F.2d 1083, 1086 n. 18 (3d Cir. 1975) (citations omitted).

Polanco v. Omnicell, Inc., 988 F. Supp. 2d 451, 464 (D.N.J. 2013). Thus, in the putative class action context it is still incumbent upon the plaintiffs to allege well-pleaded facts against the individual defendants they name in their complaint and the failure to do so is a fatal flaw. See LaSpina v. SEIU Pennsylvania State Council, No. CV 3:18-2018, 2019 WL 4081900, at *6 (M.D. Pa. Aug. 29, 2019). As we have noted:

> "[A] plaintiff must demonstrate standing for each claim he seeks to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). If a plaintiff fails to link his claims to the conduct of one defendant, then he lacks standing to sue that particular defendant because he has failed to allege the requisite traceability as to that defendant. Easter v. Am. W.

<u>Fin.</u>, 381 F.3d 948, 961–62 (9th Cir. 2004) (concluding that plaintiffs who could not trace injury to a particular defendant lacked standing to sue that defendant).

<u>Jackson v. Fed. Bureau of Prisons</u>, No. 4:19-CV-00287, 2019 WL 8752339, at *3 (M.D. Pa. Dec. 9, 2019), <u>report and recommendation adopted,</u> No. 4:19-CV-00287, 2020 WL 1243198 (M.D. Pa. Mar. 16, 2020).

For their part, the plaintiffs attempt to overcome this additional obstacle to their claims against Account Control Technology caused by the paucity of their pleadings by resorting to something occasionally referred to as the "juridical link" doctrine, an exception to the general rule that a class representative cannot bring a claim against a defendant who has caused him no harm. This exception to traditional standing principles, if it exists, only "covers cases in which the named plaintiff's injuries were 'the result of a conspiracy or concerted schemes between the defendants' and . . . . covers cases in which it would be 'expeditious' to combine the defendants into one action because they are 'juridically related.'" <u>LaSpina</u>, 2019 WL 4081900, at *7 (quoting <u>LaMar v. H & B Novelty & Loan Co.</u>, 489 F.2d 461, 466 (9th Cir. 1973)).

The plaintiffs' reliance upon the juridical link doctrine to overcome their complete failure to assert well-pleaded facts against Account Control Technology fails for at least two reasons. First, "the Third Circuit has not adopted . . . the juridical link doctrine." <u>Id.</u> Second, the juridical link doctrine only applies where

there has been wrongful concerted conduct among the defendants such that it would be expeditious to require all defendants to face legal action in a single forum. However, in this case we find that PHEAA and Account Control Technology have engaged in no wrongful acts. Quite the contrary, we conclude that PHEAA was fully warranted under federal law to use administrative garnishments to recover the moneys that Alers and Crawford had borrowed but failed to repay. In the absence of some concerted, wrongful conduct the juridical link doctrine, which has otherwise been spurned by the Third Circuit, simply has no application. Accordingly, Account Control Technology's motion to dismiss should also be granted. (Doc. 65).

### C. **Rule 11 Sanctions Are Not Appropriate in this Case.**

Having addressed these motions to dismiss on their merits, we turn to one final matter. PHEAA has also filed a motion for sanctions against the plaintiffs seeking "all attorneys' fees and costs incurred in filing this motion for sanctions and defending against Plaintiffs' meritless claims." (Doc. 69, at 2). This motion is also ripe for resolution. While we regard this as a somewhat close case, for the reasons set forth below, it is recommended that this motion be denied.[2]

---

[2] We note that we could likely address this motion by opinion and order, <u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 365 n. 1 (M.D. Pa. 2010), <u>aff'd,</u> No. 1:07-CV-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010). However, given that the issue of sanctions is inextricably intertwined with the question of the merits of the plaintiffs' complaint, a matter consigned to the exclusive judgment on the district court, we are addressing this motion through a Report and Recommendation.

The principles which govern sanctions litigation are familiar ones. By its terms, Rule 11 imposes an obligation upon litigants to refrain from frivolous and vexatious litigation, and specifically provides that:

> By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Having imposed this duty of forthrightness, candor, and good faith upon litigants, Rule 11(c) then provides for sanctions against parties who indulge in baseless and frivolous litigation, stating that:

> **(c) Sanctions.**
>
> **(1)** ***In General.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that

violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

**(2)** *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

----------------------------------------------------------------

**(4)** *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c).

In determining whether to impose Rule 11 sanctions in a given case, we are cautioned that the standard developed by courts for imposition of Rule 11 sanctions:

[I]s stringent because such sanctions 1) are "in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes," Eastway Construction Corp. v. City of New York, 637 F.Supp. 558, 564 (E.D.N.Y. 1986), modified and remanded, 821 F.2d 121 (2d Cir.), cert. denied 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); 2) tend to "spawn satellite litigation counter-productive to efficient disposition of cases," Gaiardo, 835 F.2d at 482; and 3) "increase tensions among the litigating bar and between [the] bench and [the] bar." Eastway Construction Corp., 637 F.Supp. at 564. This Court and others have interpreted its language to prescribe sanctions, including fees, only in the "exceptional

circumstance", <u>Gaiardo</u>, 835 F.2d at 483, where a claim or motion is patently unmeritorious or frivolous. <u>See, e.g.</u>, <u>Lieb v. Topstone Industries, Inc.</u>, 788 F.2d 151, 157 (3d Cir. 1986) ("Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'") (quoting <u>Zaldivar v. City of Los Angeles</u>, 780 F.2d 823, 831 (9th Cir. 1986)); <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1275 (2d Cir. 1986) ("[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'") (quoting <u>Eastway Construction Corp. v. City of New York</u>, 762 F.2d 243, 254 (2d Cir. 1985)), <u>cert. denied sub nom.</u> <u>County of Suffolk v. Graseck</u>, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

<u>Doering v. Union Cty. Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir. 1988).

"Moreover, the guiding purpose in fixing Rule 11 sanctions is fashioning a sanction adequate to deter undesirable future conduct." <u>DiPaolo v. Moran</u>, 407 F.3d 140, 146 (3d Cir. 2005). Therefore, when considering a sanctions motion, it is clear that "the main purpose of Rule 11 is to deter, not to compensate." <u>Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania</u>, 103 F.3d 294, 301 (3d Cir. 1996). Further, "[t]he language of Rule 11 evidences the critical role of judicial discretion" in making sanctions determination. <u>DiPaolo</u>, 407 F.3d at 145 (quotations and citations omitted). This discretion extends both to the decision to impose sanctions, and the determination of what an appropriate sanction may be. <u>Id.</u>

In the instant case, while we have recommended that the district court grant PHEAA's motion to dismiss this complaint, we have done so only after a searching legal scrutiny of the applicable state and federal laws. Given the stringent standards which govern Rule 11 sanctions, and mindful of the fact that such sanctions should

be reserved for exceptional circumstances where a claim or motion is patently unmeritorious or frivolous, we conclude that the proper exercise of discretion would be to dismiss this complaint against PHEAA but decline to sanction the plaintiffs for advancing a claim which, while not meritorious, was not patently frivolous. Therefore, PHEAA's motion for sanctions should be denied.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows: Defendant PHEAA and Account Control Technology, Inc.'s motions to dismiss (Docs. 61 and 65) should be GRANTED. In light of these dismissal of these defendants, Defendant PHEAA's second motion to dismiss for lack of subject matter jurisdiction, (Doc. 56), should be DEEMED MOOT. Finally Defendant PHEAA's motion for sanctions, (Doc. 69), should be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is

made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of February 2023.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge
